UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | Case No.: CV 10-3848 (ILG)(RML) |
| Plaintiff, | |
| -against- | |
| JOHN MCGEE, ("McGee") | ***RESPONSE TO DEFENDANTS MCGEE, ADVANCED MEDICAL REHABILITATION, P.C., INTEGRATED MEDICAL REHABILITATION AND DIAGNOSTICS, P.C., YELLOWSTONE MEDICAL REHABILITATION, P.C., QUEENS-BROOKLYN MEDICAL REHABILITATION P.C. and QUEENS-BROOKLYN JEWISH MEDICAL REHABILITATION, P.C.'S MOTION TO COMPEL ARBITRATION*** |
| ADVANCED MEDICAL REHABILITATION, P.C. INTEGRATED MEDICAL REHABILITATION AND DIAGNOSTICS, P.C., YELLOWSTONE MEDICAL REHABILITATION, P.C., QUEENS-BROOKLYN MEDICAL REHABILITATION, P.C., and QUEENS BROOKLYN JEWISH MEDICAL REHABILITATION, P.C., ("PC Defendants") | |
| MEDICAL MANAGEMENT AFFILIATED, LLC, FRESH MEADOWS MANAGEMENT, INC, HJR MANAGEMENT, INC., YELLOWSTONE MEDICAL MANAGEMENT, INC., ALTERNATIVE PROGRAM QUEENS DIVISION, INC., EXECUTIVE CORP., SION MARKETING, INC., And LONDON BILLING & COLLECTIONS, INC., ("Management Entities") | |
| EMILIO PAEZ, HUMBERTO ROMERO, SEMEN ILYAICH, SOFIYA BABADZHANOVA a/k/a SOFIYA ILYAICH, And MIKHAIL ILYAICH a/k/a MICHAEL ILYAICH, ("True Owners") | |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

A.    DEFENDANTS' MOTION IS UNTIMELY AND ANY RIGHT TO ARBITRATION HAS BEEN WAIVED. ............................................................................2

B.    DEFENDANTS LACK STANDING TO ELECT TO ARBITRATE THE RICO CLAIMS. ....................................................................................................................6

C.    THE RICO CLAIMS, AS AFFIRMATIVE CLAIMS TO RECOVER MONEY ALREADY PAID, CAN BE BROUGHT IN COURT IN AN INDEPENDENT ACTION AND ARE NOT SUBJECT TO THE NO-FAULT PROCEDURES OR PRACTICES REGARDING ARBITRATIONS. ............................................................8

   1.   The RICO Claims Are Not Covered By the Arbitration Provisions in the No-Fault Laws or Insurance Policies. ............................................................10

   2.   New York State and Federal Courts Have Consistently Recognized the Right of Insurers to Bring Independent Actions in Court to Recover For Fraudulent Payments. ............................................................................13

   3.   The New York Department of Insurance Has Also Opined That The No-Fault Laws Do Not Bar Affirmative Actions For Recovery By Insurers. ............15

   4.   New York Insurance Law § 409 *Requires* Insurers To Investigate Fraud And Commence Civil Actions To Recover Fraudulently Obtained Insurance Benefits. ............................................................................16

IV.   CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aiu Ins. Co. v. Olmecs Medical Supply, Inc.*,
   No. CV-04-29, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005) ................................................14

*Allstate Ins. Co. v. Bogoraz*,
   818 F. Supp. 2d 544 (E.D.N.Y. 2011) ...................................................................................14

*Allstate Ins. Co. v. Khaimov*,
   E.D.N.Y. Case No. 1:11-cv-02391-JG-JMA, Dkt 75 (Feb. 29, 2012) ..................................11

*Application of ABN Intern. Capital Markets Corp.*,
   812 F. Supp. 418, 420 (S.D.N.Y. 1993)) .................................................................................3

*Ashcroft v. Department of Corrections*,
   No. 05CV488, 2007 WL 1989265 (W.D.N.Y. July 6, 2007) ....................................................6

*Bustamante v. Napolitano*,
   582 F.3d 403 ............................................................................................................................7

*Com-Tech Assoc. v. Computer Assoc. Int'l, Inc.*,
   938 F.2d 1574 (2d Cir. 1991)....................................................................................................2

*Compucredit Corp. v. Greenwood*,
   132 S.Ct. 665 (2012) .................................................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213, 105 S. Ct. 1238 (1985).......................................................................................9

*Dover Ltd. V. A.B. Watley, Inc.*,
   No. 04 Civ. 7366, 2006 WL 2987054 (S.D.N.Y. Oct. 18, 2006) .............................................6

*Kramer v. Hammond*,
   943 F.2d 176 (2d Cir. 1991)..................................................................................................2, 3

*Norfolk Fed'n of Bus. Districts v. Dep't of Housing & Urban Dev.*,
   932 F. Supp. 730 (E.D. Va. 1996) ............................................................................................6

*Progressive Northeastern Insurance Company v. Advanced Diagnostic and Treatment Medical, P.C.*,
   426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976)………………………………..11, 16, 17

*Radzanower v. Touche Ross & Co.*,
   426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976)............................................................17

*Roe v. City of New York*,
   232 F. Supp. 2d 240 (S.D.N.Y. 2002)..................................................................17

*Shearson/American Exp., Inc. v. McMahon*,
   482 U.S. 220, 107 S. Ct. 2332 (1987).................................................................9

*Standard Chlorine of Delaware, Inc. v. Sinibaldi*,
   No. Civ. 91-188-SLR, 1994 WL 796603 (D. Del. Dec. 8, 1994)............................6

*State Farm Mut. Auto. Ins. Co.  v. CPT Medical Services, P.C.*,
   No. 04 CV 5045, 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008)......................14, 16

*State Farm Mut. Auto. Ins. Co.  v. Grafman*,
   655 F. Supp. 2d 212 (E.D.N.Y. 2009) ......................................................13, 14, 16

*State Farm Mut. Auto. Ins. Co. v. Kalika*,
   No. 04 CV 4631, 2006 WL 6176152 (E.D.N.Y. March 16, 2006)............13, 14, 16

*State Farm Mu. Auto. Ins. Co. v.  Liguori, M.D., P.C.*,
   589 F. Supp. 2d 221 (E.D.N.Y. 2008) .......................................................12, 14, 16

*State Farm Mut. Auto. Ins. Co. v. Mallela*,
   No. CV-00-4923, 2002 WL 31946762 (E.D.N.Y. Nov. 21, 2002)...................13, 16

*This Is Me, Inc. v. Taylor*,
   No. 89 Civ. 1339, 1995 WL 28521 (S.D.N.Y. Jan. 25, 1995)...............................3

*Valley Physical Med. & Rehab.*,
   F. Supp. 2d 335, 339 (E.D.N.Y. 2008) .....................................................12, 14, 16

**STATE CASES**

*A.B. Med. Servs. PLLC v. USAA Gen. Indem. Co.*,
   9 Misc. 3d 19 (A.T. 2d Dept. 2005)....................................................................7

*Fair Price Med Supply Corp. v. Travelers Indem. Co.*,
   9 Misc. 3d 76, 803 N.Y.S. 2d 337 (App. T. 2d & 11th Jud. Dists. 2005), aff'd, 837
   N.Y.S. 2d 350 (2d Dept. 2007) ..........................................................................14

*Hospital for Joint Diseases v. Allstate Ins. Co.*,
   5 A.D.3d 441 (2d Dept. 2004) ............................................................................7

*Jenkins v. Fieldbridge Associates, LLC*,
   65 A.D.3d 169, 877 N.Y.S. 2d 375 (N.Y. A.D. 2 Dept. 2009)............................17

*Lincoln Gen. Ins. Co v Alev Med. Supply, Inc.*,
   30 Misc. 3d 60 917 N.Y.S. 2d 810 (NY. 2011) ..................................................16

*Matter of Medical Socy. of State of N.Y. v. Serio*,
100 N.Y. 2d 854 (2003) ....................................................................................16

*Metroscan Imaging P.E. v. GEICO Ins. Co.*,
13 Misc. 3d 35 (Sup. Ct. App. T. 2d. 2006) .........................................................15

*State Farm Mut. Auto Ins. Co. v. Mallela*,
4 N.Y. 3d 313 (2005) .........................................................................................13

*Utica Nat 'I Ins. Grp. v. Luban*,
No. 13672/07, 2008 WL 5501013 (N.Y. Sup. Ct. Nov. 24, 2008) .........................15

**FEDERAL STATUTES**

9 U.S.C. § 1 ..................................................................................................................9

**STATE STATUTES**

N.Y. Ins. Law § 5101 ...................................................................................................6

N.Y. Ins. Law § 5106(a) .............................................................................................10

N.Y. Ins. Law § 5106(b) ........................................................................................7, 10

N.Y. Ins. Law  § 409 ..................................................................................................16

**RULES**

Federal Rule of Civil Procedure 26(f) ..........................................................................3

Federal Rule of Civil Procedure 30(b)(6) ....................................................................3

**REGULATIONS**

11 N.Y.C.R.R. § 65-1.1 ......................................................................................6, 7, 10

**OTHER**

BLACK'S LAW DICTIONARY 265 (8th ed. 2004) ...................................................7

After eighteen months of litigation in this Court, having answered, participated in discovery and aggressively pursued discovery not only from State Farm but through the use of federal subpoena power from third parties, defendants John McGee[1] and his professional corporations (the "PC Defendants")[2] now move to compel arbitration.  McGee and the PC Defendants (collectively "Defendants") appear to rely on New York's No-Fault Laws and regulations and provisions required to be contained in policies of automobile insurance in New York under the No-Fault Laws, which provide an arbitration procedure for certain types of claims.  The motion seeks to compel arbitration of the Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, which presumably means the RICO counts in which John McGee is named a defendant [Dkt. 1, Counts 4, 5, 7, 8, 10, 11][3] and seeks to stay the other parts of the case, presumably while arbitration of the RICO claims goes forward.

The motion must be denied, first and foremost, because it is too late and Defendants have waived any conceivable right they may have had to arbitrate through eighteen months of active participation in these proceedings without so much as a mention of arbitration.  Second,

---

[1]    It is unclear if the motion is being brought by both John McGee and the PC Defendants or only the PC Defendants.  The Notice of Motion includes Dr. John McGee as among those who "will move" to compel arbitration, but the Notice then refers only to "[t]he PC Defendants as seek[ing] to invoke their right to arbitrate . . . ."  [Dkt. 96.]  Similarly, the Memorandum in support of the Motion states that McGee is among those submitting the memorandum but then states that the memorandum is "in support of the PC Defendants' motion . . . to compel arbitration of the underlying RICO claims."  [Dkt. 95.]  The confusion is compounded by the fact that the PC Defendants are not even named as defendants in the RICO claims.  So that all possibilities are covered, this Response will address the motion as if it were brought by both McGee and the PC Defendants, though as discussed below, neither has standing to bring it.

[2]    John McGee's professional corporations are:  Advanced Medical Rehabilitation, P.C., Integrated Medical Rehabilitation and Diagnostics, P.C., Yellowstone Medical Rehabilitation, P.C., Queens-Brooklyn Medical Rehabilitation, P.C., and Queens Brooklyn Jewish Medical Rehabilitation, P.C. (collectively the "PC Defendants").

[3]    As noted, the professional corporations (the PC Defendants) are not named as defendants in these RICO counts.

Defendants do not have standing to compel arbitration.  The PC Defendants cannot compel arbitration of the RICO claims because they are not even named as defendants in those counts. McGee cannot compel arbitration because the claimed basis to arbitrate is the No-Fault Laws and required insurance policy provisions, under that authority only a "claimant" making a "claim" for "benefits" may seek arbitration, and McGee is not a claimant making a claim for benefits. Finally, even if the motion were timely and Defendants had standing, the motion should fail because the RICO claims are affirmative claims to recover money already paid on insurance claims and the law is clear that such claims can be brought in court in an independent action, they are not subject to the No-Fault procedures or practices regarding arbitrations, and nothing in the No-Fault Laws or typical insurance policy endorsements requires otherwise.

## A.    DEFENDANTS' MOTION IS UNTIMELY AND ANY RIGHT TO ARBITRATION HAS BEEN WAIVED.

After Defendants' active and aggressive participation in these proceedings for eighteen months without having once raised the issue of arbitration, their motion is untimely and they have waived any right to arbitrate.

Numerous federal courts have held that such active participation in litigation, particularly over a period of time, can result in waiver of the right to arbitrate.  *See Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir. 1991) (holding that right to arbitration was waived where parties engaged in protracted litigation over a four-year period, and neither the answer nor the amended answer raised arbitration as an affirmative defense or counterclaims); *Com-Tech Assoc. v. Computer Assoc. Int'l, Inc.,* 938 F.2d 1574, 1576-77 (2d Cir. 1991) (affirming district court's holding that defendants waived right to arbitration by engaging in protracted litigation prior to moving to compel arbitration, including waiting eighteen months after filing their answer and shortly before the discovery cut-off to bring their motion and failing to assert the defense of arbitration in either

2

of their answers); *This Is Me, Inc. v. Taylor*, No. 89 Civ. 1339, 1995 WL 28521, at *2 (S.D.N.Y. Jan. 25, 1995) (right to arbitration waived where discovery completed, party filed motion for summary judgment, and pretrial order was entered); *Application of ABN Intern. Capital Markets Corp.,* 812 F. Supp. 418, 420 (S.D.N.Y. 1993) (right to compel arbitration waived where defendants participated in litigation procedures not available in arbitration, including obtaining testimony from six witnesses under oath that were likely to testify at arbitration).   Among the factors relevant to waiver is whether the delay has caused prejudice, which involves consideration of the length of time before the issue of arbitration is invoked, the degree of litigation that has preceded the invocation of arbitration, and the burdens and expenses that have been incurred and that would be incurred if arbitration were compelled.  *See Kramer,* 943 F.2d at 179.

In the year and a half that has passed since the Complaint was filed, Defendants have substantially participated in this litigation.  They answered the Complaint and did not move to dismiss or move to compel arbitration at the time, nor did they even plead arbitration as an affirmative defense.  [Dkt. 17.]  Soon thereafter, they participated fully in a discovery conference pursuant to Federal Rule of Civil Procedure 26(f), which resulted in minute entries on January 6, 2011 and March 24, 2011 establishing a schedule for the completion of discovery.  Since that time, Defendants have aggressively pursued their own fact discovery and participated in the case. They have served interrogatories and two sets of document requests on State Farm, which requests seek 99 categories of documents.  These requests were not mere formalities, but required time consuming and expensive effort on State Farm's part to respond, resulting in State Farm's ultimate production of over 190,000 documents representing over 395,000 pages to date. Defendants have employed Federal Rule of Civil Procedure 30(b)(6) and issued notices of

deposition to State Farm seeking depositions of State Farm witnesses with particular knowledge. They have responded to written interrogatories and document requests propounded by State Farm, some of which have resulted in extensive attorney conferences and motion practice before the court including State Farm's motion to compel, which the Magistrate granted, and Defendants' subsequent and unsuccessful appeal of that order.  [Dkt. 67, 71, 78, 85, 88-90.] Defendants have also used federal subpoena power to seek discovery from third parties, issuing 15 subpoenas to doctors and companies that administer independent medical examinations performed on State Farm patients.  These subpoenas have themselves produced substantial motion practice in which Defendants have been active and aggressive players.  They fought State Farm's efforts to obtain a protective order to preclude those subpoenas by arguing that the discovery was critical and relevant to their defense and succeeded in convincing the court to allow two of the depositions to take place.  [Dkt. 46-48, 1/10/12 minute order.]  Thereafter, when two of the selected deponents opposed the depositions and the production of a significant volume of records, Defendants filed a motion to compel.  [Dkt. 97.]  The opposition of the non-party deponents included the argument that it was disingenuous for Defendants to be moving simultaneously to compel arbitration and to compel their depositions and the production of a significant volume of records in these proceedings.  [Dkt. 99, 101.]  Defendants did not respond to this argument.

In addition to Defendants' participation in the currently pending case, it will be recalled that McGee has initiated and pursued in Court claims against State Farm arising out of his assertion that State Farm improperly denied his claims for payment.  On January 30, 2008, John McGee filed *McGee v. State Farm, et al.* E.D.N.Y. Case No. 1:08-cv-00392-FB-CLP ("*McGee I*").  That case included RICO claims brought by McGee against State Farm.  The RICO claims

were dismissed with prejudice and the state law claims without prejudice by Judge Block, resulting in the filing on August 18, 2009 of *McGee v. State Farm, et al.* E.D.N.Y. Case No. 1:09-cv-03579-ILG-RML ("*McGee II*").   That case was also dismissed, by Judge Glasser, through order dated November 8, 2011.   While the allegations in these cases were ultimately deemed insufficient to state claims, they reflect McGee's decision to use the courts, including bringing RICO claims in federal court, rather than arbitration, to recover from State Farm for services purportedly provided to State Farm insureds.

Against this backdrop, it must be recognized that State Farm would undoubtedly suffer prejudice if it were to be required to arbitrate its RICO claims against Defendants.   Indeed, State Farm has already spent a great deal of time and money litigating this case in this forum, including responding to discovery issued by Defendants, reviewing and producing more than 190,000 documents, and bringing and responding to motions.   Arbitration would force State Farm to start from scratch in another forum.   Significantly, Defendants are only moving to arbitrate some of the claims brought by State Farm, the RICO claims, and the motion is being brought by only some of the defendants in the case.   If it were granted, the other claims against these Defendants, along with all of the claims against the other defendants, would remain to be litigated in this Court, precluding any savings and resulting in increased costs, inefficiencies and the potential for inconsistent results.

Given the amount of time that has passed since the Complaint was filed, the fact that Defendants never raised the issue of arbitration before, Defendants' active and aggressive conduct in these proceedings, and the prejudice to State Farm from compelling arbitration at this late date, the motion should be denied as untimely and because Defendants have waived any right to arbitrate.

## B.   DEFENDANTS LACK STANDING TO ELECT TO ARBITRATE THE RICO CLAIMS.

Even if the motion was timely (which it is not), Defendants are without standing to bring it.

Defendants have moved to compel arbitration of the RICO claims (presumably Counts 4, 5, 7, 8, 10, and 11).  The PC Defendants, however, are not named as defendants in these counts.  Thus, they have no basis or standing to seek to arbitrate them.  *See, e.g., Dover Ltd. V. A.B. Watley, Inc.,* No. 04 Civ. 7366, 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006) (party not named as a defendant in a claim lacks standing to attack the legal sufficiency of such claim); *see also Ashcroft v. Department of Corrections*, No. 05CV488, 2007 WL 1989265, at *8 (W.D.N.Y. July 6, 2007) (defendant lack standing to move to dismiss claims against non-appearing defendants); *Norfolk Fed'n of Bus. Districts v. Dep't of Housing & Urban Dev.,* 932 F. Supp. 730, 741-42 (E.D. Va. 1996) (finding defendant not named in particular count of complaint has no standing to defend against that count; noting similarity to standing to move for summary judgment); *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* No. Civ. 91-188-SLR, 1994 WL 796603, at *7, n.5 (D. Del. Dec. 8, 1994) (defendant not named in count of complaint "has no standing to move for its dismissal or summary judgment on the count").

As to defendant McGee, while he is a defendant in the RICO counts, he is also without standing as he does not qualify under the provisions upon which Defendants rely to compel arbitration.  Though less than clear, Defendants' motion appears to argue that their right to arbitrate arises by virtue of New York's Comprehensive Motor Vehicle Insurance Act (N.Y. Ins. Law § 5101, *et seq.*), the regulations promulgated thereunder (11 N.Y.C.R.R. § 65 *et seq.*) (collectively the "No-Fault Laws"), and the language of the typical insurance endorsement that the No-Fault Laws require to be included in every policy of automobile insurance.

A procedure for arbitrating claims for No-Fault insurance benefits appears in the No-Fault statute at Section 5106(b) of the New York Insurance Law, which states in relevant part:

> Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent.

Additionally, the No Fault regulations, in particular 11 N.Y.C.R. § 65-1.1, require that No-Fault automobile insurance policies include the following endorsement:

> Arbitration.  In the event any person making a claim for first-party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendant of Insurance.

11 N.Y.C.R.R. § 65-1.1(d).  Under either the statute or the endorsement contemplated by the regulation, the party who may arbitrate is the one making the claim for insurance benefits -- the "claimant"[4] or the "person making a claim for first party benefits."  Indeed, extending the ability to arbitrate beyond the one who is making a claim for payment of benefits would make no sense as the purpose of the arbitration provision is to provide a procedural mechanism to resolve disputes between the party making the claim and the insurer.

---

[4]     New York's Insurance Law does not expressly define a "claimaint" of No-Fault reimbursement benefits.  In plain terms, a "claimant" is defined as "[o]ne who claims or asserts a right, demand or claim."  *See* BLACK'S LAW DICTIONARY 265 (8th ed. 2004).  *See also Bustamante v. Napolitano,* 582 F.3d 403, 406 (2d Cir. 2009 (quoting *Puello v. Bureau of Citizenship & Immigration Servs.,* 511 F.3d 324, 327 (2d Cir. 2007) ("statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there") (alterations in original).  Moreover, New York courts in the context of Ins. Law § 5106(b), have applied this commonsense definition.   *See, e.g., Hospital for Joint Diseases v. Allstate Ins. Co.,*  5 A.D.3d 441, 442 (2d Dept. 2004) (noting that "a claimant whose claim for benefits has been denied" many seek arbitration under Section 5106(b); *A.B. Med. Servs. PLLC v. USAA Gen. Indem. Co.,* 9 Misc. 3d 19, 23 (A.T. 2d Dept. 2005) ("Pursuant to Insurance Law § 5106(b), each claimant provider may independently exercise the right to elect to submit their respective claims to arbitration . . . .").

McGee, by Defendants' own admission, however, is not the "claimant" or person making "a claim for first party benefits."  As alleged in the Complaint, claims for insurance benefits were made, not by McGee, but by the PC Defendants, the professional corporations at issue in this case.  [Dkt. 95 at 4] (citing Compl. ¶ 9).   Defendants argue as much.  Their brief contends that it was **the PC Defendants** who rendered treatment to State Farm insureds, received assignments of benefits from those insureds entitling them to seek reimbursement from State Farm for the services provided, and made claims to State Farm for benefits.  Defendants brief argues:

> It is important to note that *vis-a-vis* validly executed assignments; the injured insureds herein assigned their right to receive first party benefits to **the PC Defendants** who rendered the treatments at issue.  This type of assignment was acknowledged by Plaintiffs as proper in their Complaint.  Thus, having rendered medical services to their assignees and having submitted claims to the insurers, **the PC Defendants are entities who have made "a claim for first party benefits."**

[Dkt. 95 at 4] (citations omitted) (emphasis added).  Thus, the only conceivable "claimant" or "person making a claim for first party benefits" are the PC Defendants, not McGee.  Since McGee is not a claimant or person making a claim, he has no basis or ability to seek arbitration under the No-Fault Laws or insurance policy endorsements.

Thus, the PC Defendants have no standing to arbitrate the RICO claims as they are not named as defendants in those counts; while McGee cannot compel their arbitration as he is not a claimant.  Because none of the Defendants have standing to compel arbitration, their motion must be denied.

## C.   THE RICO CLAIMS, AS AFFIRMATIVE CLAIMS TO RECOVER MONEY ALREADY PAID, CAN BE BROUGHT IN COURT IN AN INDEPENDENT ACTION AND ARE NOT SUBJECT TO THE NO-FAULT PROCEDURES OR PRACTICES REGARDING ARBITRATIONS.

Even if, however, the motion were timely and Defendants had standing to seek arbitration, the motion should be denied because the RICO claims seek affirmative recovery of

money already paid and the law is clear that such claims can be brought in court in an independent action and are not subject to the No-Fault procedures or practices regarding arbitrations.

Defendants' motion relies on the Federal Arbitration Act, case law regarding arbitration, and a claim that a recent decision by the Supreme Court in *Compucredit Corp. v. Greenwood*, 132 S.Ct. 665 (2012) has "altered the field with regard to the arbitrability of federal statutory claims."  [Dkt. 95 at 2.]  In fact, none of the cases address the issues presented here, or for that matter "alter the field" regarding arbitration.  Rather, they address a host of unrelated subjects, but significantly they all recognize the basic and relevant proposition that arbitration is only appropriate when there is an arbitration agreement or provision that covers the dispute at issue. See *Compucredit*, 132 S. Ct. at 669 (addressing whether Congress intended the "right to sue" provisions of the Credit Repair Organizations Act to override the Federal Arbitration Act, but noting that the Federal Arbitration Act "requires courts to enforce agreements to arbitrate according to their terms.")  (emphasis added)); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238 (1985) (addressing whether arbitration of pendant state law claims can be compelled when the related federal claims must go forward in court and noting that parties should "proceed to arbitration on issues as to which an arbitration agreement has been signed." ) (emphasis added)); *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220,  238 – 242,  107 S. Ct. 2332 (1987) (compelling arbitration of claims according to terms of arbitration agreement); *Pacificare Health Systems, Inc. v. Book*, 538 U.S. 401,  406-07, 123 S. Ct. 1531 (2003) (compelling arbitration based on terms of arbitration agreement); *see also* Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (court may stay proceeding if it finds a valid arbitration agreement and may compel arbitration if a party refuses to comply with that agreement).  Thus, the cited law

9

does not address the fundamental defect in Defendants' demand for arbitration – there is no basis, written agreement, or provision that, by its terms, requires arbitration of the RICO claims brought by State Farm.

Defendants contend that arbitration of the RICO claims is required by the No-Fault Laws and the language of the typical insurance endorsement that the No-Fault Laws require in policies of automobile insurance. But the law could not be clearer that these provisions do not require arbitration of the RICO claims or any affirmative claims to recover payments.

      **1.**     **The RICO Claims Are Not Covered By the Arbitration Provisions in the No-Fault Laws or Insurance Policies.**

Under the No-Fault Laws and the insurance policy endorsements contemplated by the No-Fault Laws, providers of medical services may arbitrate claims to recover unpaid No-Fault benefits. The RICO counts in this complaint, however, do not constitute such claims. Rather, the RICO actions seek to recover payments already made as a result of fraud and as such, they are not subject to the arbitration provisions.

As discussed above, New York Insurance Law section 5106(b) provides, in relevant part:

> Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent.

On its face, the right to arbitrate applies where a "claimant" has a "dispute" over a "claim" for "first party benefits" or over any issue which arises under subsection (a) and thus involves the "Thirty Day Rule" (the rule which requires first party benefits to be paid or denied within thirty days after the claimant supplies proof of the fact and amount of loss). *See* N.Y. Ins. Law § 5106(a).

Defendants point to 11 N.Y.C.R. § 65-1.1, which requires that No-Fault automobile insurance policies include the following endorsement:

> Arbitration.  In the event any person making a claim for first-party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendant of Insurance.

11 N.Y.C.R.R. § 65-1.1(d).  Here again, arbitration is limited to any "disagreement" involving a "claim for first party benefits."

Considered against either the statute or the policy language, RICO claims seeking affirmative recovery for money already paid as the result of fraud are not "claims for first party benefits" or disputes involving the thirty day rule.  Indeed, the RICO claims are outside the No-Fault claim system as there are no longer any "claims," "claimants," "disputes" or "disagreements" over existing "claims" because the claims have been paid.  Simply stated, neither the No-Fault Laws nor the policy endorsement contemplated by the No-Fault laws require arbitration of the RICO claims because those claims are outside the clear meaning and language of the provisions.

Such was the finding of the court in *Progressive Northeastern Insurance Company v. Advanced Diagnostic and Treatment Medical, P.C.,* a case involving claims for affirmative recovery, including RICO claims.  In *Progressive,* the court addressed the precise issue presented here and concluded that the No-Fault Laws, section 5106(b) in particular, did not apply to require arbitration.  No. 11-cv-02391 (N.Y. Sup. Ct. Jan. 16, 2012) (order granting and denying motion to dismiss) (attached hereto as Exhibit 1).  The *Progressive* court examined the language of the statutes and held that "section [5106] is clearly intended to provide for the prompt payment of covered No-Fault expenses due to a claimant," and "would not appear to apply

where, as here, the insurer has already paid those benefits and discovers fraud on the part of a health care provider, who has submitted fraudulent claims." (*Id.* at 15.)

The same holding was reached in *Allstate Ins. Co. v. Khaimov,* E.D.N.Y. Case No. 1:11-cv-02391-JG-JMA, Dkt 75 (Feb. 29, 2012) (opinion denying motion to dismiss and motion to compel arbitration) (attached hereto as Exhibit 2). That case involved Allstate's effort to recover payments it had made based on fraudulent claims for No-Fault benefits submitted by providers of durable medical equipment. Among the counts in the complaint were RICO claims against the providers. Certain defendants moved to compel arbitration arguing that both section 5106(b) of the No-Fault Laws and the insurance endorsement contemplated by the No-Fault Laws authorized arbitration. The court rejected both arguments. Applying basic principles of contract interpretation to the standard insurance endorsement, the court found affirmative claims were simply not covered:

> The arbitration clause at issue here expressly limits its application to disagreements between Allstate and "any person making a claim for first party benefits" under the insurance contract. However, this lawsuit does not involve anyone making a claim for first party benefits. For all of the billings at issue in this case, the retailers already submitted their claims for first party benefits (upon being assigned those claims by the accident victims), and Allstate paid them. This is an affirmative action brought by Allstate to claw back those payments on the ground that they were induced by fraud. Thus, I find the arbitration clause of the Allstate insurance contracts clearly and unambiguously does not reach this case, because neither party in this case is "making a claim for first party benefits."

[*Id.* at 7-8.] The same reasoning led the court to find that the language of section 5106(b) "does not reach affirmative claims by insurance companies to recover payments already made to claimants on the ground of fraud." [*Id.* at 8.]

Consistent with this view, New York courts have regularly found that the statutory provisions that govern No-Fault claims handling processes do not apply to affirmative claims to recover payments that have already been made. *See State Farm Mut. Auto. Ins. Co. v. James M.*

12

*Liguori, M.D., P.C.,* 589 F. Supp. 2d 221, 235 (E.D.N.Y. 2008) (holding 5106(a) does not bar plaintiffs from bringing affirmative lawsuits for fraud and unjust enrichment.); *Valley Physical Med. & Rehab.,* 55 F. Supp. 2d 335, 339 (E.D.N.Y. 2008) (holding § 5106 does not preclude an insurer who fails to timely deny a claim from maintaining an affirmative cause of action for fraud (or unjust enrichment) based on allegations of fraudulent billing."); *State Farm Mut. Auto. Ins. Comp. v. Grafman,* 655 F. Supp. 2d 212, 223 (E.D.N.Y. 2009) (holding affirmative recovery claims based upon fraudulent invoicing are not barred by Section 5106(a)); *State Farm Mut. Auto. Ins. Co. v. Valery Kalika,* No. 04 CV 4631, 2006 WL 6176152, at *5 (E.D.N.Y. March 16, 2006).

As the No-Fault Laws and the cited policy endorsement do not require arbitration of affirmative claims based on RICO, these is no basis to require arbitration of State Farm's RICO claims here.

> **2.      New York State and Federal Courts Have Consistently Recognized the Right of Insurers to Bring Independent Actions in Court to Recover For Fraudulent Payments.**

In addition to the fact that neither the No-Fault Laws nor the policy endorsement required by the No-Fault Laws cover arbitration of affirmative RICO claims, courts have consistently recognized the independent and absolute right of insurers to bring affirmative actions to recover payments that were fraudulently obtained by medical providers.

An insurers' right to bring such affirmative claims was recognized by the New York Court of Appeals in *State Farm Mut. Auto Ins. Co. v. Mallela,* 4 N.Y.3d 313 (2005).  More recently, a court in this District applied this law in *State Farm Mutual Automobile Insurance Company v. Grafman,* 655 F. Supp. 2d 212 (E.D.N.Y. 2009).  In *Grafman,* State Farm brought an action against a medical center, medical supply retailers and others that asserted claims sounding in RICO, common law fraud, and unjust enrichment.  Specifically, State Farm alleged

that the defendants engaged in a scheme to defraud State Farm and collect payments for medically unnecessary medical treatment tests and durable medical equipment. *Id.* Defendants filed motions to dismiss and for judgment on the merits, all of which were denied. Among other things, the Court rejected the argument that State Farm's fraud claims were barred because State Farm did not raise the defense of fraud within 30 days of receiving the claims for benefits, as required under N.Y. Ins. Law § 5106(a), otherwise known as the "Thirty Day Rule." *Id.* at 223. In rejecting this argument, the Court stated:

> Although the New York Court of Appeals has not addressed whether Section 5106(a) precludes insurers from bringing affirmative actions based upon fraudulent invoicing schemes by medical providers, its decision in *Mallela* . . . which held that fraudulently licensed incorporations are ineligible for reimbursement, also recognized implicitly the availability of affirmative claims for fraud and unjust enrichment based upon fraudulent incorporation. In doing so, the Court rejected the simplistic arguments made by defendants that the prompt payment goals underlying the Thirty-Day Rule overcome another important state policy, the elimination of fraud in the No-Fault regime.

*Id.*

The Court continued: "[n]umerous judges have found that affirmative recovery claims based upon fraudulent invoicing are not barred by Section 5106(a)." *Id.* (citing *Progressive Ne. Co. v. Adv. Diagnostic and Treatment Med. P.C.,* 229 N.Y.L.J. 18 col. 2 (Sup. Ct., N.Y. County, Aug. 2, 2001) ("recognizing that Section 5106 'is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under auspices of any other statute or under common law'"). This conclusion that the No-Fault Laws and procedures do not bar affirmative claims to recover paid benefits has been reached by numerous New York state courts and federal courts applying New York law.[5] The reasoning of these cases reinforces the view that the arbitration

---

[5] *See Kalika,* 2006 WL 6176152, at **5-6 (denying motion to dismiss for failure to comply with the 30-day Rule and stating [t]he policy of ensuring prompt payment or denial of

procedures contained in the No-Fault Laws likewise do not apply to affirmative claims and that insurers maintain the right to bring such claims as independent actions in court.

> **3.    The New York Department of Insurance Has Also Opined That The No-Fault Laws Do Not Bar Affirmative Actions For Recovery By Insurers.**

Moreover, the New York Department of Insurance (the "Insurance Department") has concluded, based on legislative history analysis and New York Court of Appeals precedent, that affirmative actions for recovery by insurers are not barred by the provisions of the No-Fault Laws. Specifically, in a November 29, 2000 opinion, the Insurance Department concluded that provisions of the No Fault Laws did not preclude affirmative actions for recovery by insurers:

> The New York No-Fault reparations law, more specifically through the payment of benefits provisions of N.Y. Ins. Law § 5106 (McKinsey 2000), is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under the auspices of any other statute or under common law.  There is nothing in the legislative history or case law interpretations of the statute or in Insurance Department regulations, opinions or interpretations of the statute that supports the argument that the statute bars such actions.

---

claims in exchange for a reduction in the number of litigation claims filed is not served by allowing fraudulent schemes to be perpetrated without recourse to the insurer seeking reimbursement for claims wrongly paid as a result of fraud and deceit"); *Liguori,* 589 F. Supp. 2d at 224 (holding 30-Day Rule did not preclude affirmative lawsuits brought by an automobile insurer outside the no-fault statutory framework to recover for fraud or unjust enrichment against a medical provider in connection with the alleged submission of fraudulent claims); *State Farm Mut. Aut. Ins. Co. v. CPT Medical Services, P.C.,* No. 04 CV 5045, 2008 WL 4146190, at *6 (E.D.N.Y. Sept. 5, 2008); *Valley,* 555 F. Supp. 2d at 339; *Grafman,* 655 F. Supp. 2d at 212; *Allstate Ins. Co. v. Bogoraz,* 818 F. Supp. 2d 544 (E.D.N.Y. 2011); *Aiu Ins. Co. v. Olmecs Medical Supply, Inc.,* No. CV-04-29, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005); *Fair Price Med Supply Corp. v. Travelers Indem. Co.,* 9 Misc. 3d 76, 79, 803 N.Y.S. 2d 337, 340 (App. T. 2d & 11th Jud. Dists. 2005), aff'd, 837 N.Y.S. 2d 350 (2d Dept. 2007), ajJ'd, 10 N.Y. 3d 566, 860 N.Y.S. 2d 471 (2008) ("after paying [a no-fault] claim, the insurer ... may have an action to recover benefits paid under a theory of fraud or unjust enrichments"); *Utica Nat 'I Ins. Grp. v. Luban,* No. 13672/07, 2008 WL 5501013, at *3 (N.Y. Sup. Ct. Nov. 24, 2008); *Metroscan Imaging, P.E. v. GEICO Ins. Co.,* 13 Misc. 3d 35, 41 (Sup. Ct. App. T. 2d. 2006).

*See* N.Y. Dept. of Ins. Op. dated Nov. 29, 2000 (attached hereto as Exhibit 3).  As the Insurance Department is charged with interpreting New York's insurance laws, its opinion is entitled to deference.[6]  The Insurance Department's conclusion supports a holding that the statute, N.Y. Ins. Law § 5106(b), and the insurance policy endorsement required by the Insurance Departments' own regulation, 11 N.Y.C.R. § 65-1.1, "is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently obtained benefits from a claimant."

### 4. New York Insurance Law § 409 *Requires* Insurers To Investigate Fraud And Commence Civil Actions To Recover Fraudulently Obtained Insurance Benefits.

Lastly, the conclusion that State Farm's affirmative RICO claims are not subject to arbitration, under either section 5106(b) or the insurance endorsement required by 11 N.Y.C.R. § 65-1.1, is also consistent with New York Insurance Law section 409.  Section 409 *requires* insurers to investigate fraud and commence civil actions to recover fraudulently obtained insurance benefits.

The Section was considered by the court in *Progressive,* which as discussed above, expressly rejected the argument that affirmative claims are subject to arbitration under the No-Fault Laws.  Significantly, the *Progressive* court's analysis included consideration and

---

[6] *See also Mallela,* 2002 WL 31946762, at *8 (interpretations of insurance regulations by the Insurance Department's Superintendent "'will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision'") (citation omitted).  Indeed, this Insurance Department opinion has already been relied upon by numerous courts. *Matter of Medical Socy. of State of N.Y. v. Serio*, 100 N.Y. 2d 854, 873 (2003); *Lincoln Gen. Ins. Co. v Alev Med. Supply, Inc.*, 30 Misc. 3d 60, 62 917 N.Y.S.2d 810 (NY. 2011); *Grafman*, 655 F. Supp. 2d at 223; *Liguori*, 589 F. Supp. 2d at 225; *CPT Med. Srvices, P.C.*, 2008 WL 4146190 at **6-7; *Valley*, 555 F. Supp. 2d at 339-340; *Kalika*, 2006 WL 6176152 at *3.

discussion of the requirement under section 409 that insurers investigate fraud and commence

civil actions against wrongdoers.  Specifically, the court stated:

> Insurance Law § 409 requires insurers to have special investigative units, and to include in their fraud detection plans "coordination with other units of an insurer for the investigation and ***initiation of civil actions*** based upon information received by or through the special investigative unit" Insurance Law § 409(c)(4) (emphasis added).  Thus, Insurance Law § 409 anticipates the initiation of civil actions, such as this one.

*See* Exhibit 1, attached hereto, at 16.  The *Progressive* court concluded "given the mandate of §

409, then § 5106(b), providing for arbitration of claims, would appear to be inapplicable . . . ."

*Id.*

The same analysis applies here to Defendants' claim that arbitration is appropriate under

either the No-Fault Laws or the standard insurance endorsement required by the No-Fault Laws.

To compel arbitration would undermine both the recognized independent right of insurers to

bring affirmative recovery actions, as well as an insurers' enforcement obligations under

Insurance Law § 409.

The conclusion reached by the *Progressive* court is supported by the most basic

principles of statutory construction.  Such principles require courts to harmonize and reconcile

different statutory provisions.  *See Roe v. City of New York*, 232 F.Supp. 2d 240, 254 (S.D.N.Y.

2002) ("Where Legislative enactments appear to conflict it is the court's role to harmonize and

reconcile them, 'it is not the function of the court ... to declare one statute the victor over another

if the statutes may be read together, without misdirecting the one, or breaking the spirit of the

other'"); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d

540 (1976) ("It is, of course, a cardinal principle of statute construction that repeals by

implication are not favored."); *Jenkins v. Fieldbridge Associates, LLC*, 65 A.D.3d 169, 173, 877

N.Y.S.2d 375, 378 (N.Y. A.D. 2 Dept. 2009) ("The rules germane to a situation where parts of a

17

statutory scheme are in apparent conflict require that, where it is possible to do so, the court must harmonize those parts, reading and construing them together, and reconciling them in the manner most consistent with the overall legislative intent.).  The only way to reconcile the arbitration provisions in section 5106(b) and in the insurance endorsement required by the No-Fault Laws with section 409's requirement that insurers investigate fraud and "initiat[e] civil actions" to recover fraudulently paid No-Fault benefits is to find that the arbitrations provisions do not apply to affirmative claims for recovery.

## IV.     CONCLUSION

For all of the foregoing reasons, the Defendants' motion to compel arbitration and stay all

further proceedings must be denied in its entirety.


Dated: April 6, 2012
         Chicago, Illinois

                                            KATTEN MUCHIN ROSENMAN LLP


                                            By:  /s/ Jonathan L. Marks                         
                                            Ross O. Silverman (RS 4567)
                                            Jonathan L. Marks (JM 0327)
                                            Emily J. Prentice (EP 0206)
                                            525 Monroe Street
                                            Chicago, Illinois 60661
                                            (312) 902-5200

                                            Attorneys for Plaintiff State Farm Mutual Insurance
                                            Company

## CERTIFICATE OF SERVICE

On April 6, 2012, the undersigned, an attorney, states that he caused a copy of the foregoing Responses to Defendants' Second Set of Document Requests to be served by email and U.S. mail upon:

Edward K. Blodnick
Steven R. Talan
Blodnick, Fazio & Associates P.C.
1325 Franklin Avenue, Suite 555
Garden City, NY 11530
Telephone 516-280-7105
Fax 516-280-7102

Eugene F. Levy
118-35 Queens Blvd.
Suite 1515, 15th Floor
Kew Gardens, NY 11375
Telephone 718-261-7900
Fax 718-544-5703

Gary Burgoon
Lifshutz & Lifshutz P.C.
271 Madison Avenue
Suite 905
New York, NY 10016
Telephone 212-949-8484
Fax 212-922-9620

Michael G. Santangelo
Law Offices of Michael G. Santangelo
75 South Broadway
White Plains, NY 10601
Telephone 914-304-4242
Fax 914-941-4513

Anthony J. Mamo, Jr.
Law Offices of Anthony J. Mamo, Jr. PLLC
95 Beekman Avenue
Sleepy Hollow, NY 10591
Telephone 914-631-5050
Fax 914-703-6466

_____/s/ Jonathan L. Marks_____
One of the Attorneys for Plaintiff

CHI01_50717156v2_277811-00236 4/6/2012 4:07 PM

20