UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,                                                                  10-CV-3848 (ILG)(RML)

                                        Plaintiff,

    -against-

JOHN MCGEE, ADVANCED MEDICAL
REHABILITATION, P.C., INTEGRATED MEDICAL
REHABILITATION AND DIAGNOSTICS, P.C.,
YELLOWSTONE MEDICAL REHABILITATION,
P.C., QUEENS-BROOKLYN MEDICAL
REHABILITATION, P.C., QUEENS BROOKLYN
JEWISH MEDICAL REHABILITATION, P.C.,
MEDICAL MANAGEMENT AFFILIATED, LLC,
FRESH MEADOWS MANAGEMENT, INC,
HJR MANAGEMENT, INC., YELLOWSTONE
MEDICAL MANAGEMENT, INC.,
ALTERNATIVE PROGRAM QUEENS DIVISION,
INC., EXECUTIVE CORP., SION MARKETING,
INC., LONDON BILLING & COLLECTIONS,
INC., EMILIO PAEZ, HUMBERTO ROMERO,
SEMEN ILYAICH, SOFIYA BABADZHANOVA
a/k/a SOFIYA ILYAICH, and MIKHAIL ILYAICH
a/k/a MICHAEL ILYAICH,

                                        Defendants.
------------------------------------------------------------------------X

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
### DEFENDANTS' MOTION TO COMPEL ARBITRATION

BLODNICK, FAZIO & ASSOCIATES, P.C.
*Attorneys for Defendants Dr. John McGee,*
*Advanced Medical Rehabilitation, P.C., Integrated*
*Medical Rehabilitation and Diagnostics, P.C.,*
*Yellowstone Medical Rehabilitation, P.C., Queens-*
*Brooklyn Medical Rehabilitation, P.C., and Queens*
*Brooklyn Jewish Medical Rehabilitation, P.C.*
1325 Franklin Avenue, Suite 555
Garden City, New York 11530
(516) 280-7105
(516) 280-7102- fax

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... 1

INTRODUCTION

I.    DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO ARBITRATE UNDER THE
      FAA, NOR CAN PLAINTIFFS REASONABLY CLAIM PREJUDICE ....... 3

II.   DEFENDANTS HAVE STANDING TO ARBITRATE THE RICO CLAIMS HEREIN
      ............ 10

III.  THE RICO CLAIMS HEREIN ARE ARBITRABLE ................. 11

IV.   THE N.Y. DEPARTMENT OF INSURANCE OPINION IS INAPPLICABLE ... 16

V.    N.Y. INSURANCE LAW § 409 AND § 5106 ARE COMPATIBLE ......... 16

CONCLUSION ....................................................................... 17

# TABLE OF AUTHORITIES

## CASES

Allstate, et al. v. Khaimov, et al., 11-CV-02391 (E.D.N.Y. 2012)...................................... 12

Allstate, et al. v. Lyons, et al., 11-CV-2190 (E.D.N.Y. 2012) ........................................ 12

Buckwalter v. Napoli, Kaiser & Bern, L.L.P., 2005 WL 736216 (S.D.N.Y. 2005)......... 15

CompuCredit Corporation, et al. v. Greenwood, et al.,
132 S.Ct. 665, 2012 WL 43514 (2012)........................................................ 4,9,10,11,12,13

Com-Tech Assoc. v. Computer Assoc. Int'l, 938 F.2d 1574, 1576-77 (1987) ................... 5

Com-Tech Assoc. v. Computer Assoc. Int'l, 753 F.Supp. 1078, 1084 (1990) ................. 13

Country-Wide Ins. Co. v. Frolich,
465 N.Y.S.2d 446 (N.Y. City Civ. Ct. 1983)...................................................... 7

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985)............................................. 4,9

Hughes, Hooker & Co. v. American Steamship Owners Mut.
Prot. & Indemnity Ass'n, Inc., 04-cv-1859, 2005 WL 1384055 (S.D.N.Y. 2005) ........... 15

In re American Exp. Financial Advisors Securities Litigation,
672 F.3d 113 (2d Cir. 2011) ........................................................................... 4,9

In re Crysen/Montenay Energy Co., 226 F.3d 160 (2d Cir. 2000) .................................. 8

Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991) .................................................. 5

Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,
252 F.3d 218 (2d Cir. 2001) ............................................................................ 5

Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,
626 F.3d 156 (2d Cir. 2010) ............................................................................ 7

McGee v. State Farm, et al., 08-cv-00392 (E.D.N.Y. 2008) ............................................. 6

McGee v. State Farm, et al., 09-cv-03579 (E.D.N.Y. 2009) ............................................. 6

Merrill Lynch Commodities Inc. v. Richal Shipping Corp.,
581 F.Supp. 933, 936 (S.D.N.Y. 1984) ....................................................................... 15

1

<u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1 (1985)................... 6,9

<u>National Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.</u>,
376 Fed. Appx. 70, 72  (2d Cir. 2010)............................................................................ 8,9

<u>Riese v. Local 32B-32J, Service Employees International Union, AFL-CIO</u>,
779 F.2d 885 (2d Cir. 1985) ........................................................................................ 12

<u>Rush v. Oppenheimer & Co.</u>, 779 F.2d 885 (2d Cir. 1985)................................................ 4

<u>Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc.</u>,
269 F.Supp.2d 356, 366 (S.D.N.Y. 2003) ...................................................................... 15

<u>Shearson/American Express Inc. v. McMahon</u>, 482 U.S. 220 (1987)................. 3,11,12,13

<u>Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Intl, Inc.</u>,
198 F.3d 88, 98 (2d Cir. 1999) .................................................................................... 14

<u>This Is Me, Inc. v. Taylor</u>,
No. 89 Civ 1339, 1995 WL 28521 (S.D.N.Y. 1995) ...................................................... 6

<u>Tokio Marine & Fire Ins. Co., Ltd. v. M/V SAFFRON TRADER</u>,
257 F.Supp.2d 651 (S.D.N.Y. 2003) .............................................................................. 4

## <span style="font-variant:small-caps">Statutes</span>

11 N.Y.C.R.R. § 65-1.1 ................................................................................................ 4
9 U.S.C. § 2 ............................................................................................................. 3,9,11
9 U.S.C. § 3 ............................................................................................................. 3,5,15
9 U.S.C. § 4 .................................................................................................................. 3
N.Y. Insur. Law § 409 ................................................................................................. 16
N.Y. Insur. Law § 5106 ......................................................................................... 10,14,16

## INTRODUCTION

Defendants John McGee ("McGee"), Advanced Medical Rehabilitation, P.C. ("Advanced"), Integrated Medical Rehabilitation and Diagnostic, P.C. ("Integrated"), Yellowstone Medical Rehabilitation, P.C. ("Yellowstone"), Queens-Brooklyn Medical Rehabilitation, P.C. ("QBMR"), and Queens Brooklyn Jewish Medical Rehabilitation, P.C. ("QBJMR")[1] (collectively "Defendants") respectfully submit the instant Reply Memorandum of Law in further support of their motion pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA")[2] to compel arbitration of the underlying RICO claims asserted by the plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm" or "Plaintiff") against Defendants herein and to stay the balance of the proceedings pending arbitration. (See Dkt. No. 95).

Despite the Plaintiff's assertion to the contrary, the Defendants have not waived their right to arbitrate the underlying RICO claims in accordance with the FAA, and have standing to bring this motion. Moreover, the Plaintiff fails to make any reference to the case of Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 228, 107 S.Ct. 2332 (1987), a United States Supreme Court decision which examined the Racketeer Influenced and Corrupt Organizations Act (RICO) statute to determine if the FAA's mandate was overridden by congressional command and found that "there is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act." Emphasis added.

---

[1]   Advanced, Integrated, Yellowstone, QBMR, and QBJMR are collectively referred to herein as the "PC Defendants."

[2]   9 U.S.C. §§ 3-4.

It should also be noted that with regard to arbitration under the FAA, the Supreme Court has left the District Courts with little room for discretion when a valid arbitration agreement exists between the parties.  <u>See Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985).  It is beyond cavil that a valid arbitration agreement exists between the parties in the instant action.  (<u>See</u> 11 N.Y.C.R.R. § 65-1.1).  Section 2 of the FAA,[3] along with the Supreme Court's recent decision in the case of <u>CompuCredit Corporation, et al. v. Greenwood, et al.</u>, 565 U.S. __, 132 S.Ct. 665 (2012), establish that this Court should grant the Defendants' motion.

## I.  DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO ARBITRATE UNDER THE FAA, NOR CAN PLAINTIFFS REASONABLY CLAIM PREJUDICE

The Defendants have not waived their right to arbitrate under the FAA, and more importantly, the Plaintiff cannot reasonably claim that it would suffer *any* prejudice "if it were to be required to arbitrate its RICO claims against Defendants" (<u>see</u> State Farm's Response to Defendants' Motion, p. 5) in light of the Second Circuit's decision in <u>In re American Exp. Financial Advisors Securities Litigation</u>, 672 F.3d 113 (2d Cir. 2011).  At the outset, it is important to note the strong federal policy favoring arbitration, especially when considering the issue of waiver, as the Second Circuit has held that "**waiver of arbitration is not be lightly inferred.**"  <u>Rush v. Oppenheimer & Co.</u>, 779 F.2d 885, 887 (2d Cir. 1985) (emphasis added); <u>see also</u> <u>Tokio Marine & Fire Ins. Co., Ltd. v. M/V SAFFRON TRADER</u>, 257 F.Supp.2d 651 (S.D.N.Y. 2003) (the FAA "requires a court to

---

[3] "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2.

determine whether an arbitration agreement has been waived, and thereby unenforceable; there is a strong presumption in favor of arbitration, and waiver of the right to arbitrate is not to be lightly inferred"); see also 9 U.S.C. § 3.

The Second Circuit considers the following factors when determining whether or not a party has waived its right to arbitrate the dispute in question: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010); citing Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 229 (2d Cir. 2001).

In opposition to the Defendants' motion, the Plaintiff alleges that "it is too late" for the Defendants to seek arbitration after having actively participated in the litigation of the instant action for some eighteen months. (See State Farm's Response to Defendants' Motion, p. 1). In support of this contention, the Plaintiff cites to the cases of Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991) and Com-Tech Assoc. v. Computer Assoc. Int'l, Inc., 938 F.2d 1574, 1576-77 (2d Cir. 1991). However both are readily distinguishable. In Kramer, the Court found that a waiver had occurred after the parties had engaged in litigation for four years. This is simply not the case here, where the parties have been engaged in litigation for less than half that time.

With regard to Com-Tech Assoc., although the eighteen month time period is similar to the case at bar, that is where the similarities end. In Com-Tech Assoc., the motion to compel arbitration was made "on the eve of trial" and after discovery had been completed in the action, including depositions, and the filing of an omnibus motion for

judgment on the pleadings and partial summary judgment. (Id. at 1576-77). In the instant action, discovery is far from complete, the bulk of party depositions remain to be conducted and dispositive motions have yet to be filed.

The Plaintiff also goes on to cite to the case of This Is Me, Inc. v. Taylor, No. 89 Civ. 1339, 1995 WL 28521 (S.D.N.Y. 1995). However, this case is also not applicable to the instant matter. In This Is Me, Inc., discovery had been completed after five years of litigation and defendants filed motions for summary judgment, neither of which have occurred in this case. Id. at 2.

Inasmuch as the Plaintiff points out that McGee previously initiated and pursued court claims against State Farm (McGee v. State Farm, et al., 08-cv-00392 (E.D.N.Y. 2008) ("McGee I") and McGee v. State Farm, et al., 09-cv-03579 (E.D.N.Y. 2009) ("McGee II")) prior to his seeking the arbitration of the underlying RICO claims in this matter, it is clear that the gravamen of McGee I and II, are/were inherently different from the issues presently before the Court. In McGee I and II, McGee sought recovery of No-Fault claims that State Farm had not paid. However, McGee was not afforded relief in either of those actions. Here, State Farm seeks to "claw back" payments that were previously made, either through arbitration, litigation, settlement or direct payment, to the McGee professional corporations. By their very nature, these claims were not the subject of McGee I and II. Here, State Farm is obviously not seeking to "claw back" payments that it never made in the first instance. Rather, State Farm is seeking, in the guise of a RICO action, to re-open and re-examine claims that it previously paid either through settlement or direct payment, or by litigation or arbitration. See Riese v. Local 32B-32J, Service Employees International Union, AFL-CIO, unreported decision, 1986 WL 84814,

1 (N.Y. Cty. Sup. 1986) (holding that respondents did not waive or abandon their rights to seek to arbitrate their entitlement to additional severance payments where the respondents had previously accepted petitioner's severance checks and no objection was stated for two years.)

In <u>Country-Wide Ins. Co. v. Frolich</u>, 465 N.Y.S.2d 446 (N.Y. City Civ. Ct. 1983) the Court held unequivocally that claimants may compel arbitration in a "defensive" context, as here, where an insurer files an affirmative lawsuit to recover benefits already paid. The Court granted a medical provider's motion to compel arbitration where an insurer had initially paid benefits but subsequently filed a lawsuit to recover the payment. <u>See Id.</u> at 446. Although the question of whether a claimant could elect arbitration as a defendant was "novel" at the time, the Court had no trouble granting the motion stating, "[c]learly, the option to arbitrate a dispute involving first party benefits pursuant to the statute and regulations lies with the claimant, who may choose between the arbitration provided by statute and a judicial forum . . . ." <u>Id.</u>

Consequently, it cannot be said that McGee and his professional corporations somehow waived their right to arbitration in the instant action by having initiated McGee I and II.

Furthermore, in the case of <u>Louisiana Stadium</u>, <u>supra</u>, the Second Circuit stated that "[t]here is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the . . . factors must be applied to the specific context of each particular case. That said, [t]he key to a waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." <u>Louisiana Stadium</u>, 626 F.3d at

7

159 (emphasis added).   "Prejudice as defined by our cases refers to the inherent unfairness-in terms of delay, expense, or damage to a party's legal position-that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue."  In re Crysen/Montenay Energy Co., 226 F.3d 160, 162-63 (2d Cir. 2000).

State Farm has not shown that it would suffer any cognizable prejudice if this Court were to grant Defendants' motion to compel arbitration.   The Plaintiff asserts (albeit in a self-serving, conclusory manner) that it would "undoubtedly suffer prejudice if it were to be required to arbitrate its RICO claims against Defendants" because: (1) it has already expended resources to litigate in this forum; (2) arbitration would purportedly force State Farm to "start from scratch in another forum;" and (3) since Defendants seek to arbitrate only some of the claims in the Complaint, in turn, all of the other claims against the remaining Defendants would proceed, precluding "any savings and resulting in increased costs, inefficiencies and the potential for inconsistent results."  See State Farm's Response to Defendants' Motion, p. 5.

The Second Circuit has held that simply "[i]ncurring legal expenses inherent in the litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver."  National Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp., 376 Fed. Appx. 70, 72 (2d Cir. 2010) (citation omitted).  State Farm has not set forth in their opposition papers how they have expended resources and expenses above and beyond those inherent in the litigation of a civil RICO matter in the Eastern District of New York.  Without

more, such allegation of prejudice regarding the resources spent on this matter is insufficient in light of National Union.[4]

Further, any prejudice that State Farm alleges that it would suffer if arbitration of the underlying RICO claims were ordered by this Court is nullified by the Second Circuit's decision in American Exp., supra, 672 F.3d at 113.  In American Exp., the Second Circuit reiterated the long-standing Supreme Court precedent that "[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern **requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation.**"  American Exp., 672 F.3d at 142; citing Dean Witter, 470 U.S. at 221 (emphasis added); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1985) ("[F]ederal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement.") (emphasis in original).  As such, State Farm cannot rely upon its contention that it would be prejudiced as a result.

To the extent that the Defendants herein are the only defendants in the instant action that have moved for arbitration, such fact is simply insufficient in order to overcome the rigid application of the FAA.  See 9 U.S.C. § 2; CompuCredit, 132 S.Ct. at 669; Dean Witter, 470 U.S. at 218.

Lastly, the timing of the CompuCredit decision in January 2012 which both reinforced the Supreme Court's earlier holding in Shearson and altered the landscape

---

[4]     It should also be noted that while State Farm goes to great lengths to detail Defendants' active participation in the defense of this matter to date (see Dkt. No. 103, at 2-4), the Court should consider the Plaintiff's exceedingly active and aggressive role in this matter, as the Plaintiff has heavily litigated practically every issue in this case, while also seeking unduly expansive discovery from the parties and non-parties in this matter.

with respect to the arbitration of claims, restricted the filing of this motion to March 5, 2012.[5]

## II.  DEFENDANTS HAVE STANDING TO ARBITRATE THE RICO CLAIMS HEREIN

The Plaintiff's limiting description of the relevant state and federal laws concerning arbitration are inaccurate, as the Defendants, in fact, possess standing to arbitrate the underlying RICO claims herein.  Not surprisingly, none of the cases cited by the Plaintiff in support of the proposition that the Defendants lack standing herein concern a case such as the instant action by an insurer as against a medical provider regarding the payment of No-Fault benefits and the RICO claims which emanate there from.

It is beyond dispute that the underlying insurance contracts between State Farm and the Defendants herein contain an arbitration clause.  (See Dkt. No. 95, 3-4).  State Farm even concedes this fact.  (See Dkt. No. 103, at 6-7).  The purposefully broad language set forth in § 5106(b) of the New York Insurance Law encompasses the dispute between State Farm and the Defendants regarding the payment of No-Fault benefits as well as the RICO claims which arise out of the claims for payment of No-Fault benefits which Defendants have previously submitted to State Farm.  Section 5106(b) provides in relevant part that "[e]very insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first

---

[5] The United States Supreme Court's recent decision in CompuCredit, decided after the Moving Defendants' answer was interposed in this action, held that when a statute is silent on whether claims can proceed in an arbitrable forum, the FAA requires an arbitration agreement to be enforced according to its terms.  A parties' absolute right to arbitrate claims that arise from a contract or agreement that contains an arbitration clause cannot be foreclosed merely because one party commences an action in federal court and asserts claims under a federal statute.  See CompuCredit, supra, at 669, 673.

party benefits, the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration . . ."

Section 2 of the FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . <u>shall be valid, irrevocable, and enforceable</u>." 9 U.S.C. § 2 (emphasis added).

Despite the fact that the Plaintiff's RICO causes of action are not leveled specifically against the McGee professional corporations, the Defendants are entitled to the arbitration of these RICO causes of action as "but for" the dispute between the parties regarding the payment of the No-Fault benefits, the RICO claims simply would not exist. They are inextricably intertwined.  Clearly, the Plaintiff's RICO causes of action require the re-opening and re-examination of previously paid No-Fault insurance benefits to the McGee professional corporations.  As such, the Defendants have the right to elect to arbitrate them under the arbitration clause contained in State Farm's insurance contracts.

## III.   <u>THE RICO CLAIMS HEREIN ARE ARBITRABLE</u>

The RICO claims asserted against the McGee professional corporations herein *have not* been overridden by a contrary congressional command, and are arbitrable as per the Supreme Court's decision in <u>CompuCredit</u>.

Plaintiffs carefully sidestep the Supreme Court's decision in <u>Shearson</u>, 482 U.S. at 228 which determined that "<u>there is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the [FAA]</u>." As <u>CompuCredit</u> made clear, "Section 2 of the FAA . . . requires that courts enforce arbitration agreements according to their terms . . . That is the case even when

federal statutory claims are at issue, unless the FAA's mandate has been overridden by a contrary congressional command." CompuCredit, 482 U.S. at 238.  When read in conjunction, CompuCredit, McMahon, and the FAA permit arbitration of the underlying RICO claims.

It is further respectfully submitted that despite Judge Gleeson's previous holdings in Allstate Ins. Co. v. Khaimov, 11-cv-02391 (E.D.N.Y. 2012)[6] and Allstate Ins. Co. v. Lyons, 11-cv-2190 (E.D.N.Y. 2012)[7] the Plaintiff's RICO causes of action against the Defendants in the instant action are subject to arbitration.

The Court's analysis in *Khaimov* and *Lyons* places form over substance.  While it is true that State Farm is not making a claim for first party benefits in the instant action, the causes of action that it has asserted against the Defendants in its Complaint (and specifically the RICO claims) are all based on "matters relating to" first party benefits, as Plaintiff's contend that they did not have to make any payments in the first place. Therefore, the Plaintiff's action is actually a dispute regarding and arising out of the McGee professional corporations' entitlement to first party benefits and as a result is subject to arbitration.  See Riese, supra.

In the instant action State Farm is, *inter alia*, trying to enforce a federal statutory right, namely a RICO claim.  It is settled that civil RICO claims are subject to arbitration.

---

[6] Allstate Ins. Co. v. Khaimov, 11-cv-02391 (E.D.N.Y. 2012) (holding that the subject arbitration provision at issue did not require Allstate to arbitrate its affirmative claims because the clause was limited to "any person making a claim for first party benefits" and that the lawsuit in that case did not involve anyone making a claim for first party benefits. The Court did hold, however, that Allstate had to arbitrate its affirmative claims against the defendant Medical P.C.s for claims that Allstate had not paid).

[7] Allstate Ins. Co. v. Lyons, 11-cv-2190 (E.D.N.Y. 2012) (holding that the scope of the arbitration clause in the Allstate insurance contracts did not reach any of the claims then before the Court except for those still pending for which Allstate had not yet paid).

See Com-Tech Assocs. v. Computer Assocs. Int'l, 753 F.Supp. 1078, 1084 (E.D.N.Y. 1990) (explaining that the U.S. Supreme Court's decision in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332 (1987), "expressly held that civil RICO claims are subject to an arbitration clause.")

In CompuCredit, supra, the Supreme Court reinforced its earlier holding in McMahon, by holding that an arbitration agreement is enforceable with respect to a cause of action created by a provision of the RICO Act, despite the RICO Act containing similar language to the Credit Repair Organizations Action which states, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit…" CompuCredit, supra, at 4. (See Shearson/American Express Inc. v. McMahon, supra,; 18 U.S.C. §1964(c)).   The Court specifically noted, "it takes a considerable stretch to regard the non-waiver provision as a "congressional command" that the FAA does not apply." Id.

In McMahon, the Supreme Court acknowledged that, "there is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act.  The silence in the text is matched by silence in the statute's legislative history." McMahon, 482 U.S. 220 at 238.

The Supreme Court's holding in CompuCredit essentially directs the arbitration of all causes of action under federal statutes, where there is an arbitration agreement.  This decision also demonstrates how the Supreme Court favors the enforcement of arbitration clauses for claims that are arbitrable.

13

The RICO claims set forth in the Complaint are arbitrable despite the fact that State Farm has not alleged those causes of action against the McGee professional corporations because such causes of action are founded or otherwise predicated on the underlying issue of No-Fault insurance benefit payments to the McGee professional corporations. Clearly, it is the McGee professional corporations that are being alleged to be corrupt "enterprises" under RICO although they are not named in the RICO causes of action by Plaintiff. Further, it is the McGee professional corporations that will be detrimentally impacted if the relief sought in the respective RICO causes of action were granted although they are not named therein. <u>See</u> Plaintiff's Fourth, Fifth, Seventh, Eighth, Tenth and Eleventh causes of action.

Under a contract analysis, when a non-signatory to an arbitration agreement seeks to compel arbitration with a signatory (State Farm) — courts will estop the signatory from avoiding arbitration "when the issues the nonsignatory is seeking to resolve in arbitration are <u>intertwined</u> with the agreement that the estopped party has signed." <u>See Smith/Enron Cogeneration Ltd. P 'ship v. Smith Cogeneration Intl, Inc.</u>, 198 F.3d 88, 98 (2d Cir. 1999) (internal quotation marks omitted) (Emphasis added). In other words, a litigant cannot shield itself from arbitration by suing only related parties that have no arbitration agreement with the litigant. <u>Id.</u> This is exactly the tactic that State Farm is attempting to employ here. However, State Farm's RICO claims are clearly intertwined with the underlying dispute over No-Fault benefits payments. Thus, similar to <u>Smith/Enron</u>, State Farm may not avoid arbitration on the ground that only the McGee professional corporations are claimants or assignees under N.Y. Ins. Law § 5106(b) and the State Farm insurance contracts, where the key officer and shareholder of these

14

corporations themselves (McGee) seeks arbitration, and where the issues they seek to resolve are intertwined with arbitrable issues.

In consideration of the foregoing, all of the Plaintiff's RICO claims (which arise in one way or another from the McGee professional corporations' entitlement to or the payment of No-Fault benefits) should be arbitrated, and the balance of this action stayed pending such arbitration.

All of State Farm's legal claims herein concern whether the McGee professional corporations were entitled to payment under the New York No-Fault law. A stay would minimize the chance of inconsistent outcomes and duplicative discovery. These reasons counsel in favor of staying any of State Farm's claims which may somehow be deemed to be non-arbitrable. See Hughes, Hooker & Co. v. American Steamship Owners Mut. Prot. & Indemnity Ass'n, Inc., 04-cv-1859, 2005 WL 1384055, at 6 (S.D.N.Y. 2005).

The Court has the power under Section 3 of the FAA "to stay proceedings when issues are referable to arbitration pursuant to a written agreement." Buckwalter v. Napoli, Kaiser & Bern L.L.P., 2005 WL 736216, at 4 (S.D.N.Y. 2005) (quoting Merrill Lynch Commodities Inc. v. Richal Shipping Corp., 581 F.Supp. 933, 936 (S.D.N.Y. 1984)). Further, "[e]ven though Section 3 of the Federal Arbitration Act by its terms requires a federal court to stay an action to resolve a dispute subject to an arbitration agreement between the parties, '[w]hen all of the issues raised in a litigation lie within the scope of an arbitration agreement, courts have the discretion to dismiss the action rather than issue an order directing a stay.'" Buckwalter, at 9 (quoting Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc., 269 F. Supp.2d 356, 366 (S.D.N.Y. 2003).

## IV. THE N.Y. DEPARTMENT OF INSURANCE OPINION IS INAPPLICABLE

State Farm's reliance on the opinion rendered by the New York Department of Insurance is misplaced because the opinion only addresses the question of whether an insurer is *prohibited* from bringing a civil action for an affirmative recovery. The opinion is clearly limited in its response to the question posed, the opinion being concerned solely with the right of an insurer to a means of recourse by which to recover No-Fault payments allegedly obtained by fraud. The opinion does not address the issue presented in the instant action, i.e., whether a medical provider can compel an insurer to arbitrate claims for an affirmative recovery after the insurer has already paid the No-Fault claims. As a result, the opinion relied upon by State Farm is of no utility here and is otherwise inapplicable to this matter.

## V. N.Y. INSURANCE LAW § 409 AND § 5106 ARE COMPATIBLE

New York Insurance Law § 409 is expressly intended to prevent fraud. However, the mere contemplation of a suit as mentioned in § 409 does not in any way preclude or override the application of New York Insurance Law § 5106 with regard to the affirmative claims of insurers. New York Insurance Law § 5106 merely establishes that if an insurer commences an action under New York Insurance Law § 409, then the medical provider has the option to request arbitration. Under this scheme, the right to arbitrate in accordance with New York Insurance Law § 5106 is preserved along with New York Insurance Law § 409's fraud prevention goal by providing the Plaintiff with the ability to seek redress for fraud.

## CONCLUSION

The Defendants have the right to elect to arbitrate <u>any dispute</u> related to No-Fault insurance benefit payments including RICO claims. State Farm's Complaint arises out of and concerns just such a dispute over its prior payment of No-Fault insurance benefits and its obligations to pay pending claims. Moreover, the Defendants retain their right to elect arbitration (which is not waived) when an insurer chooses to bring an affirmative action after having previously paid benefits. For the reasons stated herein, the Defendants demand arbitration of the RICO claims asserted against them.

As demonstrated herein, each of State Farm's insurance contracts at issue in the instant action contain an arbitration provision. This provision permits the Defendants to arbitrate the issue of their entitlement to reimbursement of No-Fault benefits from State Farm where the parties do not agree on the compensation that is due.

In conclusion, this Court should compel arbitration of the Plaintiff's RICO claims against the Defendants and stay the balance of the instant action pending arbitration.

17

Dated: Garden City, New York
April 30, 2012

BLODNICK, FAZIO & ASSOCIATES, P.C.

s/ *Thomas R. Fazio*
By:    Thomas R. Fazio (TF 0871)
       Steven R. Talan (ST 5353)
       Jonathan J. Arzt (JA 6303)

Attorneys for Defendants

*John McGee, Advanced Medical Rehabilitation,*
*P.C., Integrated Medical Rehabilitation and*
*Diagnostic, P.C., Yellowstone Medical*
*Rehabilitation, P.C., Queens-Brooklyn Medical*
*Rehabilitation, P.C., and Queens Brooklyn Jewish*
*Medical Rehabilitation*

1325 Franklin Avenue, Suite 555
Garden City, New York 11530
(516) 280-7105
(516) 280-7102 Fax
e-mail: tfazio@blodnickfaziolaw.com

18