UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

STATE FARM MUTUAL AUTOMOBILE INS. CO.,

        Plaintiff,                             Memorandum and Order

                                                          10 Civ. 3848

    - against -

JOHN McGEE, et al.

        Defendants.
------------------------------------------------------x

GLASSER, United States District Judge:

       Plaintiff, State Farm Mutual Automobile Insurance Company ('State Farm" or "plaintiff") filed this action on August 20, 2010 against nineteen defendants, alleging claims pursuant to the Racketeer-Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., New York State Law, and common law fraud. On March 5, 2012 defendants Dr. John McGee ("Dr. McGee"), Advanced Medical Rehabilitation, P.C., Integrated Medical Rehabilitation and Diagnostics, P.C., Yellowstone Medical Rehabilitation, P.C., Queens-Brooklyn Medical Rehabilitation, P.C., and Queens Brooklyn Jewish Medical Rehabilitation, P.C. (the "PC Defendants") (collectively, "defendants") moved to stay proceedings and compel arbitration of plaintiff State Farm's RICO claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4. For the reasons set forth below, defendants' motion is denied.

1

## BACKGROUND

Plaintiff's factual allegations are set out in the Court's previous decision, familiarity with which is assumed. See Memorandum & Order dated February 21, 2012 (Dkt. No. 90) ("Feb. 21 Order"). Briefly, plaintiff alleges that defendants and a number of other individuals engaged in a scheme to defraud State Farm. Compl. ¶¶ 1-4. As part of that scheme, Dr. McGee, a doctor of osteopathy, treated patients insured by State Farm's automobile insurance who had been injured in automobile accidents (the "insured individuals"). Id. ¶ 1. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law § 5101, et seq.; 11 N.Y.C.R.R. § 65, et seq. ("New York No-Fault Laws"), State Farm is required to provide Personal Injury Protection Benefits of up to $50,000 per insured individual for necessary expenses incurred for medical services. An insured individual may assign his or her Personal Injury Protection Benefits to the healthcare provider in exchange for those services, permitting the healthcare provider to submit claims directly to the insurer for payment. State Farm alleges that insured individuals assigned their benefits to the defendants. Compl. ¶¶ 9 , 15. State Farm alleges that Dr. McGee then ordered medically unnecessary tests and treatments, administered by the PC Defendants, in order to fraudulently obtain payment from State Farm. Id. ¶¶ 24-26.

## DISCUSSION

Defendants seek to stay proceedings and compel arbitration on the grounds that the insurance contracts between State Farm and the insured individuals contained the following provision:

> In the event any person making a claim for first-party benefits and the Company do not agree regarding any matter relating to the clam, such person shall have the option of submitting such disagreement to arbitration pursuant to the procedures promulgated or approved by the Superintendent of Insurance.

Defendants' Memorandum of Law ("Defs.' Mem.") at 3 (citing 11 N.Y.C.R.R. § 65-1.1(d)). Defendants argue that because the insured individuals validly assigned their rights as first-party beneficiaries under the contracts to the PC Defendants, defendants are now entitled to compel arbitration. In opposition, plaintiff argues that defendants have waived their right to arbitration, lack standing to elect to arbitrate RICO claims, and the RICO claims are not subject to the arbitration provision in the insurance contracts. Because the Court determines that defendants have waived their right to arbitration, it is unnecessary to address plaintiff's other arguments.

## I. Defendants' Have Waived Their Right to Arbitration

The Federal Arbitration Act ("FAA") requires a federal court to enforce an arbitration agreement and stay litigation that contravenes it. See 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ."). It is well-established that federal public policy strongly favors arbitration. However, where a party has a right to submit a dispute to arbitration as an alternative to litigation, the opportunity to exercise that right is not indefinite. By engaging in litigation that prejudices the opposing party, a party may be deemed to have waived the right to arbitration. PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997) ("[A] party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party.").

There is "no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration" and the determination depends on the particular facts of each case. Louisiana Stadium & Expo. Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010). Waiver is not to be lightly inferred and "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." PPG Indus., 128 F.3d at 107-08. In determining whether a party has waived its right to arbitration, courts in this Circuit consider the following three factors: (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice. Louisiana Stadium, 626 F.3d at 159 (citations omitted). "Generally, waiver is more likely to be found the longer the litigation goes on, the more a party avails itself of the opportunity to litigate, and the more that party's litigation results in prejudice to the opposing party." Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102,105 (2d Cir. 2002).

Of the three factors, the third—prejudice—is most significant. "Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985) (emphasis added); accord Thyssen, Inc., 310 F.3d at 105 ("The key to a waiver analysis is prejudice."). Prejudice "'refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" PPG Indus., 128 F.3d at 107-08. Prejudice has been found "when a party seeking to compel arbitration engages in discovery procedures not available in

4

arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." Cotton v. Slone, 4 F.3d 176, 179 (2d Cir. 1993) (internal citations omitted). "No bright line defines [prejudice]—neither a particular time frame nor dollar amount automatically results in such a finding—but it is instead determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the surrounding circumstances." Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991).

In the instant case, defendants have participated in litigation proceedings for almost two years without ever raising the defense of arbitration. To justify this delay, defendants argue they were unable to file the motion to compel arbitration until March 5, 2012 after, "the CompuCredit decision in January 2012 which both reinforced the Supreme Court's earlier holding in Shearson[/American Exp., Inc. v. McMahon, 482 U.S. 220, 107 S. Ct. 2332 (1987),] and altered the landscape with respect to the arbitration of claims." Defs.' Mem. at 9-10. The Court is unable to discern any reason why defendants were prevented from filing their motion prior to CompuCredit Corp. v. Greenwood, 565 U.S. ___, 132 S. Ct. 665 (2012), a decision that defendants implicitly acknowledge merely reinforced the Court's well-established holding that RICO claims may be arbitrated. The motion to compel could have been filed immediately upon service of the Complaint; defendants needed no discovery and were well-aware of the language of the insurance contracts. Consequently, defendants have provided no legitimate explanation for their eighteen-month delay, a factor that weighs in favor of finding waiver. See, e.g., S & R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83

(2d Cir. 1998) (fifteen month delay supported finding of waiver); Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576 (2d Cir. 1991) (eighteen month delay supported finding of waiver); Manos v. Geissler, 321 F. Supp. 2d 588, 594 (S.D.N.Y. 2004) (seventeen month delay supported a finding of waiver).

However, delay alone is not sufficient to infer waiver. Any delay must be considered in conjunction with the litigation activity that took place during this time period, along with any proof that the party seeking to avoid arbitration suffered prejudice. PPG Indus., 128 F.3d at 109. Here, defendants have actively and aggressively engaged in litigation. The docket sheet for this case records more than one hundred entries and defendants' participation in more than ten hearings before the magistrate judge, prior to filing this motion. In their brief, plaintiff accurately summarizes defendants' participation in the litigation as follows:

> [Defendants] answered the Complaint and did not move to dismiss or move to compel arbitration at the time, nor did they plead arbitration as an affirmative defense. Soon thereafter, they participated fully in a discovery conference . . . . establishing a schedule for completion of discovery. Since that time, Defendants . . . . have served interrogatories and two sets of document requests on State Farm, which requests seek 99 categories of documents. These requests were not mere formalities, but required time consuming and expensive effort on State Farm's part to respond, resulting in State Farm's ultimate production of over 190,000 documents representing over 395,000 pages to date. Defendants have employed Federal Rule of Civil Procedure 30(b)(6) and issued notices of deposition to State Farm seeking depositions of State Farm witnesses with particular knowledge. They have responded to written interrogatories and document requests . . . some of which have resulted in extensive attorney conferences and motion practice before the court . . . . Defendants have also used federal subpoena power to seek discovery from third parties, issuing 15 subpoenas to doctors and companies that administer independent medical examination performed on State Farm

6

> patients. These subpoenas have themselves produced substantial motion practice. . . . [Defendants] fought State Farm's efforts to obtain a protective order to preclude those subpoenas by arguing that discovery was critical and relevant to their defense and succeeded in convincing the court to allow two of the depositions to take place.

Pl.'s Mem. in Opp. at 3. The extent to which defendants have engaged in discovery and the cost and delay this has imposed on plaintiff compels a finding of prejudice. See, e.g., S & R Co. of Kingston, 159 F.3d at 84 (prejudice found where party engaged in two settlement conferences, sought 3 depositions, 19 detailed interrogatories, and the production of more than 2100 pages in documents during 15 month delay).

In addition to responding to defendants' extensive discovery requests, plaintiff was also subject to the expense of litigating defendants' appeal of the order of Magistrate Judge Levy compelling defendants to produce Dr. McGee's personal tax and banking records and the PC Defendants' tax and business records. See Order of Magistrate Judge Levy dated January 11, 2012 (Dkt. No. 82). In a decision dated February 21, 2012, this Court affirmed the decision of the magistrate judge in all respects. See Feb. 21 Order. Shortly thereafter and for the first time, defendants sought to compel arbitration. See Motion to Compel Arbitration dated March 5, 2012 (Dkt. No. 95). The inference the Court draws from this sequence of events is that defendants engaged in the discovery process in a calculated fashion: having obtained documentary discovery from plaintiff, defendants now seek to avoid this Court's order compelling their own disclosures. This inference is reinforced by the fact that the day after defendants filed their motion to compel arbitration, they nevertheless submitted a motion, seeking to

compel third parties to response to two burdensome subpoenas.[1]  See Motion to Compel Third-Party Depositions dated March 6, 2012 (Dkt. No. 97).  "[A] litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court."  Louisiana Stadium, 626 F.3d at 161.

Significantly, defendants do not contend that the discovery they have obtained would have been available in arbitration.  When a party seeking to compel arbitration engages in discovery procedures not available in arbitration, this also weighs in favor of a finding of prejudice.  Manos, 321 F. Supp. 2d at 595 ("Defendants do not deny that they obtained pre-trial discovery in this action that would not have been available in the arbitral forum.  This is sufficient when considered in light of the delay caused by defendants to demonstrate that plaintiff would be prejudiced if this Court granted defendants' motion to compel."); see also PPG Indus., 128 F.3d at 109 (waiver found where plaintiff "used the judicial process to secure a substantial amount of information that it otherwise would not have had in its possession."); Cotton, 4 F.3d at 180 (waiver found where defendant's extensive pre-trial litigation caused delay and expense and defendant obtained "discovery that is often unavailable in an arbitral forum"); Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp., 996 F.2d 1478, 1479 (2d Cir. 1993) (per curiam) (waiver found where party engaged in discovery not available in arbitration); Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 n.7 (2d Cir. 1968) (noting that taking advantage of judicial discovery procedures not available in arbitration could be sufficient prejudice to warrant finding waiver (citations omitted)).

---

[1] See Minute Entry for Proceedings Before Mag. J. Levy dated March 30, 2012 ("[T]he third-party subpoenas to Metro Medical and Dr. Santiago as presently constituted are burdensome and overly broad.").

Defendants attempt to distinguish this case from those where waiver has been found. They argue that they have not waived arbitration because the parties have not yet litigated any dispositive motions. Defs.' Mem. at 6. While this is often a factor in favor of waiver, dispositive motions are not required before waiver can be found. S & R Co. of Kingston, 159 F.3d at 84 ("We have found no case that supports the argument that such [dispositive] motions are required before waiver can be found." (citation omitted)); Del Turco v. Speedwell Design, 623 F. Supp. 2d 319, 342 (E.D.N.Y. 2009) ("[Prejudice] does not necessarily require filing of dispositive motions" and can include "serving extensive discovery requests."). Defendants also argue waiver should not be found because discovery has not been completed. Defs.' Mem. at 6. Again, waiver is often found when a motion to compel arbitration is filed after discovery ends and a trial date is set, but there is no bright-line rule that waiver cannot occur prior to that stage in the litigation. See, e.g., Forrest v. Unifund Financial Grp., Inc., No. 04 Civ. 5151 (LTS), 2007 WL 766297, at *6 (S.D.N.Y. Mar. 13, 2007) (waiver based solely on motion practice, where no discovery had been conducted); Manos, 321 F. Supp. 2d at 594 (participation in three status conferences, taking of plaintiff's deposition, and motion practice limiting discovery sufficient to infer waiver).

Considering defendants' lengthy and unjustified delay in bringing this motion, the extent to which discovery has been conducted, defendants' engagement in that discovery process and calculated timing in bringing this motion, and the expense these protracted proceedings have imposed on plaintiff, the Court finds that defendants' have waived their right to arbitrate plaintiff's claims. "To permit litigants to exercise their contractual rights to arbitrate at such a late date, after they have deliberately chosen to

9

participate in costly and extended litigation would defeat the purpose of arbitration: that disputes be resolved with dispatch and with a minimum of expense." Com-Tech Assocs., 938 F.2d at 1578.

## **CONCLUSION**

For all of the reasons set forth previously, defendants' motion to stay the proceedings and compel arbitration is denied.

**SO ORDERED.**

Dated:    Brooklyn, New York
         June 25, 2012

```
       /s/
```
I. Leo Glasser
United States District Judge